14-4115-cr
*United States v. Borrero*


UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10th day of November , two thousand and fifteen.

Present:
        PIERRE N. LEVAL,
        PETER W. HALL,
        GERARD E. LYNCH,
            *Circuit Judges,*

_____

UNITED STATES OF AMERICA,

        *Appellee*,

    v.                                 No. 14-4115-cr

LOUIS BORRERO,

        *Defendant-Appellant.*

_____

For Defendant-Appellant:    GLENN A. GARBER, P.C., New York, NY.

For Appellee:           RAHUL MUKHI, Assistant United States Attorney for the Southern District of New York (Brian A. Jacobs, Assistant United States Attorney, *on the brief*), *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, NY.

_____

Appeal from a judgment of the United States District Court for the Southern District of New York (Forrest, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

On November 12, 2013, Defendant Louis Borrero was convicted by a jury of conspiring to distribute and possessing with the intent to distribute over one kilogram of heroin in violation of 21 U.S.C. §§ 846 & 841(b)(1)(A), conspiring to commit robbery in violation of the Hobbs Act, 18 U.S.C. § 1951, and carrying or possessing a firearm in relation to these crimes, or aiding and abetting the same, in violation of 18 U.S.C. § 924(c)(1)(A)(i). The offenses stemmed from a DEA sting operation designed to halt a series of violent robberies of drug dealers committed by a group that called itself the "Crew." Following conviction, Borrero was sentenced to 324 months imprisonment. We assume the parties' familiarity with the facts, procedural history, and issues presented on appeal.

Borrero first contends that the court abused its discretion in admitting the testimony of his co-defendant Victor Moral, who later became a cooperating witness. Moral testified that Borrero's co-conspirator, Julio Camacho, had informed him prior to the robbery that Borrero was a "wild boy" who "gets busy" and that Camacho had "work[ed]" with Borrero "before." JA 412. Moral testified that he interpreted Camacho's statements to mean that Borrero was capable of going into victims' houses and tying people up and that he had done so in previous robberies with Camacho.

Borrero asserts that it was error to admit Moral's testimony because (1) the testimony was unduly prejudicial under Federal Rule of Evidence 403; (2) Moral did not have sufficient personal knowledge to provide a lay opinion as to the meaning of Camacho's statements, *see*

2

Fed. R. Evid. 701, 602; and (3) admission of the statements violated the Confrontation Clause. Because Borrero did not raise any of these arguments below, our review is solely for plain error. *See* Fed. R. Crim. P. 52(b).

Borrero's arguments are not persuasive. Although Camacho's statements regarding Borrero's willingness to participate in the robbery were indeed prejudicial, they were also highly probative of Borrero's planned role in the crime as understood by Camacho, who was widely acknowledged to be one of the conspiracy's ring leaders.[1] *See United States v. Borrero*, No. 13 CR. 58 KBF, 2013 WL 5797126, at *4 (S.D.N.Y. Oct. 28, 2013) (noting that Camacho's statements were "plainly designed to assure other potential crew members of the strengths and skill sets of crew members," including Borrero). Despite the implication that Borrero was involved in other uncharged crimes, the statements were "needed to explain the basis of the relationship [between Borrero and the Camachos] and [to] provide[] background for the jury's understanding as to how and why there [was] trust by the Camachos in Borrero's skills." *Id.* at *5. Any past criminal acts referenced in Camacho's statements were not "any more sensational or disturbing" than the crimes with which Borrero was charged. *United States v. Pitre*, 960 F.2d 1112, 1120 (2d Cir. 1992).

Moral's testimony regarding his interpretation of Camacho's statements was based on his personal knowledge and was helpful to the jury's understanding. A lay witness's relevant fact testimony is admissible so long as "evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. Here, Moral had personal knowledge of Camacho's statements because he participated in the conversation about which he later testified. *See United States v. Skelly*, 442 F.3d 94, 100 (2d Cir. 2006) (upholding admission

---

[1] Borrero does not appeal the trial court's determination that Camacho's statements, as elicited through Moral's testimony, were admissible as statements by a co-conspirator in furtherance of the conspiracy pursuant to Federal Rule of Evidence 801(d)(2)(E).

of witness's testimony regarding meaning of conversations where witnesses "had first-hand knowledge of the conversations").

Under Evidence Rule 701, opinion testimony of a lay witness is admissible when it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Moral's testimony was rationally based on his association with the Camacho brothers, and the testimony assisted the jury in understanding ambiguous or slang terms such as "wild boy," and "get[ting] busy," and also Camacho's vague assertion that he had "work[ed]" with Borrero "before." *See United States v. Aiello*, 864 F.2d 257, 265 (2d Cir. 1988) (upholding admission of lay opinion testimony that clarified "ambiguous references to events that [were] clear only to the conversants" (alteration omitted)).

Finally, the admission of Moral's testimony pursuant to Rule 801(d)(2)(E) did not violate Borrero's rights under the Confrontation Clause. The "co-conspirator exception to the hearsay rule is steeped in our jurisprudence," *Bourjaily v. United States*, 483 U.S. 171, 183 (1987), and admission of such testimony does not require the unavailability of the declarant or a judicial finding of reliability in order to comport with the Confrontation Clause. *Id.* at 183–84. Accordingly, Borrero's arguments that the Camacho brothers' unavailability to testify and Moral's unreliability as a witness undermined his confrontation rights are inapposite.[2] Moreover, "statements [made] in furtherance of a conspiracy" are "by their nature . . . not

---

[2] Borrero had ample opportunity effectively and thoroughly to challenge Moral's credibility on cross-examination. Ultimately, it was for the jury to decide the weight to give Moral's testimony. *See Fischl v. Armitage*, 128 F.3d 50, 58 (2d Cir. 1997) ("[A]ssessment of [a witness's] credibility is within the province of the jury alone.").

testimonial" and thus do not implicate the protections of the Confrontation Clause. *Crawford v. Washington*, 541 U.S. 36, 56 (2004).

Borrero also contends that his sentence was substantively unreasonable. "A sentencing judge has very wide latitude to decide the proper degree of punishment for an individual offender and a particular crime." *United States v. Cavera*, 550 F.3d 180, 188 (2d Cir. 2008). "[W]e will not substitute our own judgment for the district court's on the question of what is sufficient to meet the [18 U.S.C.] § 3553(a) considerations in any particular case." *Id.* at 189. Instead, we will "set aside a district court's *substantive* determination only in exceptional cases where the trial court's decision 'cannot be located within the range of permissible decisions.'" *Id*. (quoting *United States v. Rigas*, 490 F.3d 208, 238 (2d Cir. 2007)).

Based on an Offense Level of 37 and a Criminal History Category of VI (and his Career Offender status), Borrero's guideline range was 420 months (35 years) to life. In determining the sentence, the court took into account the seriousness of the "large-scale violent armed robbery" that Borrero and his co-defendants had planned, though not executed, and the fact that they possessed the "tools of the trade," including guns, police gear, and ski masks. JA 839. Further, the court noted that Borrero himself came into possession of two of the guns prior to the robbery and credited the testimony at trial that he "was part of a robbery crew" that had participated in violent robberies in the past. JA 839. The court also considered Borrero's extensive criminal history and his admission that he supported himself financially with criminal activity for a period of at least two years. At the same time, the court believed that a sentence at the bottom of the guidelines range would be greater than necessary to punish the offense conduct, particularly considering the relatively lighter sentences received by Borrero's co-defendants. The court sentenced Borrero to 324 months (27 years) of imprisonment, eight years

5

less than the minimum of the guidelines range and two years higher than the statutory mandatory minimum sentence of 25 years.

The trial court thoughtfully considered each of the § 3553(a) factors, and its sentence was substantively reasonable. The disparity between the sentences of Borrero and co-defendants was justified in light of Borrero's extensive criminal history and his decision, unique among his co-defendants, to go to trial.

For these reasons, the judgment of the district court is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK